# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

JOSE A. MATOS ARROYO,

      Plaintiff,

v.                                   Case No. 2:23-cv-557-JRK

MARTIN J. O'MALLEY,
Commissioner of Social Security,[1]

      Defendant.

## OPINION AND ORDER[2]

### I.   Status

Jose A. Matos Arroyo ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of osteoarthritis, fibromyalgia, bilateral knee replacements, degenerative disc disease, diabetes, asthma, high blood pressure, high cholesterol, sleep

---

[1]    Mr. O'Malley was sworn in as Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Mr. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 15), filed September 22, 2023; Reference Order (Doc. No. 16), entered September 26, 2023.

apnea, restless leg syndrome, anxiety, and gout. Transcript of Administrative Proceedings (Doc. No. 10; "Tr." or "administrative transcript"), filed September 18, 2023, at 108, 120, 395, 419. Plaintiff protectively filed an application for DIB on April 26, 2021, alleging a disability onset date of February 13, 2021.[3] Tr. at 261-72. The application was denied initially, Tr. at 107, 108-18, 156-59, and upon reconsideration, Tr. at 119, 120-30, 162-65.

On February 1, 2023, an Administrative Law Judge ("ALJ") held a hearing,[4] during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 38-85. On March 1, 2023, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 17-31.[5]

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief authored by his counsel. See Tr. at 4-5 (Appeals Council exhibit list and order), 259-60 (request for review), 516-19 (brief). On June 21, 2023, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3,

---

[3] Although actually completed on either April 26, 2021 or July 12, 2021, see Tr. at 265, 266, the protective filing date for the DIB application is listed elsewhere in the administrative transcript as April 26, 2021, see, e.g., Tr. at 108, 120.

[4] The hearing was held via telephone and videoconference, with Plaintiff's consent. Tr. at 40, 220-22, 252-54.

[5] The administrative transcript also contains ALJ decisions dated May 16, 2019 and February 12, 2021 that adjudicated earlier-filed claims for DIB and supplemental security income (SSI). Tr. at 134-43, 89-101. Those decisions are not directly at issue in this appeal, although Plaintiff does raise an issue that the current ALJ was bound to follow a factual finding of the 2019 ALJ.

thereby making the ALJ's Decision the final decision of the Commissioner. On July 26, 2023, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff contends the ALJ: 1) "erred and circumvented the Medical-Vocational Guidelines" ("Grids"); 2) "erred in his evaluation of the opinion of consultative examining psychologist Kathleen Lederman[n]"[6]; 3) improperly "evaluated Plaintiff's testimony regarding his symptoms"; and 4) "erred in failing to identify jobs that Plaintiff could perform, given that each of the three jobs cited by the ALJ require exertional abilities in excess of the residual functional capacity" ("RFC"). Plaintiff's Memorandum in Opposition to the Commissioner's Decision (Doc. No. 24; "Pl.'s Mem."), filed November 13, 2023, at 1-2; see id. at 6-12 (issue one), 12-21 (issue two), 22-24 (issue three), 24-29 (issue four). On December 13, 2023, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 26; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

---

[6] Plaintiff spells the last name with one "n" but it actually contains two. See Tr. at 562, 566.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[7] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 19-31. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since February 13, 2021, the alleged onset date." Tr. at 19 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the

---

[7] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

following severe impairments: lumbar degenerative disc disease, obesity, osteoarthritis of the knees, chronic pain syndrome, fibromyalgia, diabetes mellitus, depression, generalized anxiety disorder with panic attacks, and intermittent explosive disorder." Tr. at 20 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 21 (emphasis and citation omitted).

> The ALJ determined that Plaintiff has the following RFC:
>
> [Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b) with li[f]ting and/or carrying twenty pounds occasionally and ten pounds frequently and with sitting, standing, and walking six hours each in an eight-hour workday except he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl but can never climb ladders, ropes, or scaffolds. He cannot tolerate concentrated exposure to extreme cold, extreme heat, humidity, vibration, fumes, dusts, gases, odors, poor ventilation, unprotected heights, moving machine parts, and a SCO noise level no greater than three, which is moderate. He is limited to simple, repetitive, routine tasks, and he cannot work at production rate pace. He can tolerate occasional interaction with coworker and supervisors, and he can work a low stress job defined as few workplace changes.

Tr. at 24 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "tractor trailer truck driver." Tr. at 30 (some emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after

considering Plaintiff's age ("49 years old, which is defined as a younger individual . . . on the alleged disability onset date" with a subsequent "changed age category to closely approaching advanced age"), education ("at least a high school education"), work experience, and RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 30 (some emphasis omitted), such as "housekeeping cleaner," "electrical accessories assembler," and "small products assembler," Tr. at 31. The ALJ concluded Plaintiff "has not been under a disability . . . from February 13, 2021, through the date of th[e D]ecision." Tr. at 31 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322

(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff raises four issues, and they are addressed in turn.

### A. ALJ's finding for light work despite a 2019 ALJ decision finding only sedentary work

Plaintiff first contends the ALJ erred in finding he is able to perform light work (with additional restrictions) despite another ALJ, adjudicating other claims in 2019, finding he can only perform sedentary work. Pl.'s Mem. at 1, 6-12. According to Plaintiff, had the ALJ here found he can only perform sedentary work, the Grids would have dictated a finding of disabled. Id. at 7. Responding, Defendant argues the ALJ was not bound to follow the 2019 ALJ

decision, and the ALJ's assigned RFC is supported by substantial evidence. Def.'s Mem. at 2, 6-7.

Plaintiff's argument fails. This ALJ adjudicated a period from the alleged onset date of February 13, 2021 through the date of the Decision (March 1, 2023). Tr. at 31. The prior ALJ adjudicated a period from January 22, 2016 through the date of that decision (May 16, 2019). Tr. at 142-43. In other words, almost two years passed between the 2019 Decision and the alleged onset date of the disability. The ALJ was not bound to find the same facts as the 2019 ALJ. See, e.g., Torres v. Comm'r of Soc. Sec., 819 F. App'x 886, 888 (11th Cir. 2020) ("We agree with the district court that the previous [ALJ decision] did not determine the same facts and issues as this case and the ALJ was not bound by administrative res judicata.")

In otherwise arguing that the ALJ should have found he was limited to sedentary work or less, Plaintiff essentially just restates his conditions and cites various cases, most of which are out of district and otherwise non-binding. See Pl.'s Mem. at 7-12 (citations omitted). Plaintiff has not identified a basis for finding error in the ALJ's assessment of his RFC.

**B. Opinion of examining psychologist Dr. Ledermann**

Plaintiff argues the ALJ erred in evaluating the opinion of consultative examining psychologist Dr. Ledermann. Pl.'s Mem. at 1, 12-21. According to Plaintiff, the ALJ improperly emphasized that the opinion was based upon

subjective complaints, and the ALJ allegedly substituted his own medical judgment for that of Dr. Ledermann. Id. at 17-21. Defendant responds that the ALJ properly considered Dr. Ledermann's opinion and explained why it was unpersuasive, while at the same time finding persuasive some non-examining opinions on Plaintiff's mental limitations. Def.'s Mem. at 8-14.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. § 404.1513(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical

sources." 20 C.F.R. § 404.1520c(a).[8] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. § 404.1520c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not

---

[8] Plaintiff filed his application after the effective date of section 404.1520c, so the undersigned applies the revised rules and Regulations.

exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).[9]

At issue here is the October 5, 2021 opinion of examining psychologist Dr. Ledermann. Tr. at 562-66, 567-69. After examining Plaintiff and summarizing her findings, see Tr. at 562-66, Dr. Ledermann opined on Plaintiff's mental work-related functional abilities, see Tr. at 567-69. According to Dr. Ledermann, Plaintiff has moderate to marked difficulties in numerous functional areas, including understanding and remembering complex instructions, carrying out complex instructions, making judgments on complex work-related decisions, and interacting appropriately with the public, supervisors, and coworkers. Tr. at 567-68. Dr. Ledermann also assigned moderate limitations in responding appropriately to usual work situations and changes in a routine work setting. Tr. at 568. Dr. Ledermann was of the view that Plaintiff could not manage his own benefits if they were received. Tr. at 569.

The ALJ found Dr. Ledermann's opinion "unpersuasive," elaborating as follows:

---

[9] When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. § 404.1520c(b)(1).

> [T]he opinion appears to rely more on the subjective reporting of [Plaintiff] than the objective clinical findings in the longitudinal treatment records showing [Plaintiff] generally with normal mood and social functioning or in Dr. Ledermann's consultative examination, such as near intact concentration with only one error in serial 7s and recalling three objects immediately, one object after a delay, six digits forward, and four digits backward. There was little indication in the consultative examination or in the longitudinal records of social problems, anger issues, or social isolation that support the marked social limitations. Moreover, [Plaintiff] received routine and conservative medication management from the primary care without the need for more intensive or extensive specialized mental health treatment, which does not support Dr. Ledermann's opinion.

Tr. at 29.

The ALJ did not err in addressing Dr. Ledermann's opinion. While the ALJ did make a finding that it appeared to be more based upon subjective reporting, the ALJ also made other findings about the opinion's lack of supportability and consistency both internally and as compared to the rest of the medical evidence. See Tr. at 29. These findings are supported by substantial evidence, see generally Tr. at 580-669 (primary care notes), and need not be disturbed.

### C. ALJ's evaluation of Plaintiff's subjective complaints

Plaintiff argues the ALJ erred in evaluating his subjective complaints because he "did not explain which of [Plaintiff's] symptoms he found consistent or inconsistent with the evidence in the record." Pl.'s Mem. at 23; see id. at 1-2,

22-24. Responding, Defendant contends the ALJ's analysis of Plaintiff's subjective complaints is legally sufficient and supported by substantial evidence. Def.'s Mem. at 15-18.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

The Regulations provide that an ALJ "will" consider the following factors related to symptoms such as pain:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other factors concerning [the claimant's] functional

> limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii); see Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1277 (11th Cir. 2024). The factors must be considered "in relation to other evidence in the record and whether the claimant's statements conflict with other evidence." Raper, 89 F.4th at 1277 (citation omitted); see 20 C.F.R. § 404.1529(c)(4). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869.[10] Particularly related to fibromyalgia, SSR 12-2p "provides guidance on how the [Administration] develops evidence that a person has a medically determinable impairment of fibromyalgia and how it evaluates fibromyalgia in disability claims." Sorter v. Soc. Sec. Admin., Comm'r, 773 F. App'x 1070, 1073 (11th Cir. 2019) (citing SSR 12-2p, 2012 WL 3104869).

---

[10] Social Security Rulings "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations that [the Administration has] adopted." 20 C.F.R. § 402.35(b)(1).

There are two main ways set forth in SSR 12-2p for evaluating whether fibromyalgia is a medically determinable impairment. The first way requires a claimant to have "[a] history of widespread pain" that "may fluctuate in intensity and may not always be present," as well as "[a]t least 11 positive tender points on physical examination" with various requirements; and finally, "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p. The second way requires "[a] history of widespread pain"; "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." Id.

Once an ALJ determines that a claimant has the medically-determinable impairment of fibromyalgia, the ALJ proceeds with a symptom-evaluation process. Id. "If objective medical evidence does not substantiate the [claimant's] statements about the intensity, persistence, and functionally limiting effects of symptoms, [the Administration is to] consider all of the evidence in the case record, including the [claimant's] daily activities, medications or other treatments the [claimant] uses, or has used, to alleviate symptoms; the nature and frequency of the [claimant's] attempts to obtain medical treatment for

symptoms; and statements by other people about the [claimant's] symptoms." Id.

Then, the fibromyalgia impairment is included in the five-step sequential evaluation process as with other impairments. Id. When an ALJ is considering the RFC, SSR 12-2p directs that "for a person with [fibromyalgia,] we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'good days and bad days.'" Id.

Here, the ALJ complied with applicable authority in finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 25. The ALJ specifically discussed Plaintiff's fibromyalgia and various trigger point findings, as well as the other alleged impairments. Tr. at 25-26. The ALJ found, however, that "the longitudinal medical records contain substantial evidence in objective medical findings and in treatment that are not consistent with [Plaintiff's] allegations pertaining to the severe physical impairment." Tr. at 26. The ALJ then discussed the evidence in detail. Tr. at 26-27.

Further, the ALJ recognized Plaintiff alleges "experiencing significant limitations in his activities of daily living," but found the evidence of record was

not consistent with his allegations. Tr. at 27. The ALJ specifically pointed out that: Plaintiff "did not report such difficulties to his providers consistently"; Plaintiff "worked as a school bus driver into 2022" (not at substantial gainful activity levels); Plaintiff "drove himself forty minutes to a consultative examination without reported difficulty"; and the administrative transcript lacked documentation of reported side effects of medication. Tr. at 27.

Plaintiff does not challenge any of these findings, instead arguing the ALJ should have stated precisely which allegations he was accepting. Pl.'s Mem. at 23. The ALJ, however, followed applicable authority in assessing Plaintiff's subjective symptoms. To the extent they were accepted, the ALJ accounted for them in the RFC finding. See Tr. at 24. Otherwise, the ALJ provided adequate and supported rationale for rejecting the subjective assertions. The ALJ did not err.

**D. ALJ's step five findings**

Plaintiff argues the ALJ erred at step five in finding he can perform various jobs existing in significant numbers in the national economy. Pl.'s Mem. at 2, 24-29. According to Plaintiff, he cannot perform the identified jobs of "housekeeping cleaner," "electronic accessories assembler," and "small products assembler" because his assigned RFC is inconsistent with their descriptions set forth the in the Occupational Requirements Survey ("ORS") that is conducted by the U.S. Bureau of Labor Statistics. Id. at 25. Plaintiff also contends that

each job, according to the DOT, carries a "temperament of R" which corresponds to "requiring work according to a set procedure, sequence, or pace." Id. at 28. Plaintiff posits this requirement is inconsistent with his RFC that limits him to no production rate pace. See id.; Tr. at 24.

At step five in the sequential inquiry, "the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform." Phillips, 357 F.3d at 1239. To make this determination, the ALJ may pose a hypothetical question to a VE. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996)); see also Zimmer v. Comm'r of Soc. Sec., 211 F. App'x 819, 820 (11th Cir. 2006) (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir.1999) ("An ALJ relies on the testimony of a [VE] to determine what level of skill the claimant achieved in his [or her] past work, whether the claimant has transferable skills, and whether the claimant can perform other jobs.")). "In order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227 (citing Jones, 190 F.3d at 1229). If there are "apparent conflicts" between a VE's testimony and the DOT, the ALJ must identify them, "ask the VE about them, and explain how the conflict was resolved in the ALJ's . . . [D]ecision." Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1365 (11th Cir. 2018); see also SSR 00-4P, 2000 WL 1898704, at *2.

The ALJ is required to "articulate specific jobs" that exist in the national economy "that the claimant can perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted).

Here, Plaintiff did not submit any of the ORS data to the ALJ or the Appeals Council. To the extent he now relies on it, Plaintiff has not identified a conflict between the DOT and the VE's testimony, which is the relevant inquiry. As for the jobs requiring a temperament of "R"—again not by the DOT but instead by SkillTRAN[11]—Plaintiff alleges this temperament is inconsistent with his RFC for no production pace work. The definition of "R" is "[p]erforming repetitive work, or performing continuously the same work, according to set procedures, sequence, or pace." See Pl.'s Mem. at Ex A p.3 (emphasis added). This definition is not apparently in conflict with the VE's testimony that Plaintiff can perform the jobs at issue despite no production pace work. See, e.g., Horton v. Kijakazi, No. 8:21-cv-435-WFJ-CPT, 2022 WL 4229338, at *11 (M.D. Fla. Aug. 5, 2022) (report and recommendation), adopted, 2022 WL 3593917 (M.D. Fla. Aug. 23, 2022). The ALJ did not reversibly err.

---

[11] The Court need not determine whether SkillTRAN would qualify to establish a DOT conflict because, assuming one can be established through the use of SkillTRAN data, there has been no conflict established here.

## V.   Conclusion

The ALJ's Decision is supported by substantial evidence. In light of the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 9, 2024.

_____
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record